## Chicago, Burlington & Quincy R. R. Co. v. Charles L. Appell, Adm'r.

1. INSTRUCTIONS—*Where Case Is Close.*—Where the case is a very close one upon the facts, the instructions given the jury should be clear and explicit.

2. SAME—*Speed of Trains.*—An instruction to the effect that the ordinance introduced in evidence is a valid law of the village, and if the jury believe from the evidence in this case that the defendant was, at the time of the injury complained of, running the train that killed deceased within the corporate limits of said village at a rate of speed in excess of that allowed by said ordinance, then the law presumes that the defendant by so doing was guilty of negligence and liable in damages for causing the death of said deceased, is erroneous, as it ignores the question whether the excessive rate of speed contributed to bring about the death of deceased, and also the vital question whether deceased was, at the time, in the exercise of ordinary care for his own safety.

3. SAME—*Burden of Proof.*—An instruction which states to the jury that the burden is upon the plaintiff to prove, by the greater weight of the evidence, not only the negligence of the defendant as charged in the declaration, but also to prove by the greater weight of the evidence that the deceased was free from negligence which contributed to the collision which caused his death, and that if they find from all the evidence in the case that the plaintiff has not so proven both of said facts, then they should find the defendant not guilty, is proper.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Peoria County; the Hon. LESLIE D. PUTERBAUGH, Judge presiding. Heard in this court at the April term, 1902. Reversed and remanded. Opinion filed July 18, 1902.

JACK & TICHENOR, attorneys for appellant.

CARL J. APPELL and ARTHUR KEITHLEY, attorneys for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was a suit brought by appellee, as administrator of the estate of .Noah A. Johnson, deceased, on behalf of the next of kin, to recover damages for the death of said Johnson, which is alleged to have been caused by the negligence of appellant. On the day of his death, Johnson was engaged in hauling corn from his uncle's farm, northwest of appellant's tracks, to an elevator located on the southerly side of said tracks in Galva. In going to and from the farm to the elevator, Johnson crossed appellant's tracks, within the village limits, at the Bowdoin street crossing, about thirty-five rods east of the west boundary of the village. Shortly after eleven o'clock in the morning on the day in question, which was February 22, 1901, deceased was returning to the farm after delivering a load to the elevator. He drove west on Johnson street, to Bowdoin street and then turned north along the latter street to the crossing in question. It was 130 feet from the center of Johnson street where it intersects Bowdoin street to the center of appellant's tracks. At the crossing in question, appellant's tracks run southwest and northeast, the easterly track being nearest to Johnson street and the first to be crossed by deceased in the direction he was going. Some 500 feet down the track, toward the southwest, was a large house with trees and out-buildings around it which obscured the view of the track beyond, from one coming west on Johnson street and for a short distance north on Bowdoin. street from the intersection of the two streets. Johnson was in a farm wagon, with the top box on it for greater capacity in hauling corn, and was standing up near the front end with the lines in his left hand. The morning was cold and clear. He had on a large ulster with the collar turned up, a muffler around the lower part of his face, and his cap was pulled down over his ears. As he approached the crossing he was apparently looking straight ahead. The engineer sounded the station whistle at the post some half a mile from the crossing and shortly afterward shut off the steam. He first saw Johnson when the

latter was some sixty to seventy-five feet from the crossing. The danger whistle was sounded when within 150 to 200 feet of the crossing and at the same time brakes were applied and the engine reversed.

It is uncertain when Johnson first saw the train, but it was evidently about the time the danger signal was given. When he observed it he was apparently bewildered. He at first started to whip his horses, with the evident intention of driving over before the train, but afterward stopped, with the team and part of the wagon on the track, and endeavored to pull his horses around so as to clear the track. The team was frightened, however, and he did not succeed in getting off the track. The engine struck the front wheel of the wagon, throwing Johnson some fifty feet and killing him instantly. It also demolished the wagon, killed one horse and injured the other. The train ran some 300 feet beyond the crossing before stopping.

There are two counts in the declaration. The first charges that the train was driven at a high and dangerous rate of speed into and within the corporate limits of the village. The other set up an ordinance prohibiting any train from running at a greater rate of speed than ten miles an hour, within the limits of the village, and alleges that the train was running at a greater rate of speed than permitted by the ordinance. The general issue was filed and there was a verdict and judgment in favor of appellee for $2,500.

Appellant claims that the proofs show that it was not guilty of any negligence causing or contributing to bring about the death of Johnson, but that Johnson, upon the occasion when he was killed, was not in the exercise of ordinary care for his own safety. · A careful consideration of the evidence leads to the conclusion that the case is a very close one upon the facts. Under such conditions the instructions given the jury should be clear and explicit.

The first instruction given for appellee was as follows:

" You are instructed that the ordinance introduced in evidence is a valid law of the village of Galva, and if you believe from the evidence in this case that the defendant was, at the time of the injury complained of, running the train

that killed Noah Johnson, within the corporate limits of said village of Galva, at a rate of speed in excess of ten miles per hour, then the law presumes that the defendant by so doing was guilty of negligence, and liable in damages for causing the death of said Noah Johnson."

This instruction did not state a correct principle of law. By it the jury were authorized to render a verdict in favor of plaintiff in case they found the defendant was, at the time in question, running its train within the corporate limits of the village at a greater rate of speed than ten miles per hour, regardless of the question whether the excessive rate of speed contributed to bring about the death of Johnson, and also of the vital question whether Johnson was, at the time, in the exercise of ordinary care for his own safety. Appellee claims that whatever error there may be in this instruction was cured by the series of instructions taken as a whole. There was no instruction, however, given for appellee which satisfactorily cured the errors of the first instruction. It is true that one instruction given for appellant told the jury that the running of appellant's train at a rate of speed in excess of the limit fixed by the ordinances of the village, only made out a *prima facie* case of liability against appellant, which might be removed or rebutted by the proof, and several of appellant's instructions told the jury that if they found that deceased, at the time in question, was not exercising reasonable care and diligence for his own safety, appellee could not recover.

There was, however, something more than a mere omission in appellee's first instruction to be cured. It told the jury plainly and positively that under a certain state of facts, appellee was entitled to recover, when in truth such condition of the facts did not of itself entitle him to a recovery. We can not say whether the jury followed this instruction, given for appellee, or the instructions which stated the law correctly, given for appellant. Under such circumstances, and particularly where the case is so close upon the facts as this one is, we must hold that the error in the instruction was not cured by the other instructions given in the case. B. & O. S. W. R. R. Co. v. Derr, 69 Ill. App. 180.

Appellant also complains that the following instruction offered by it was refused:

" The court instructs the jury that the burden is upon the plaintiff to prove, by the greater weight of the evidence, not only the negligence of the defendant as charged in the declaration, but also to prove by the greater weight of the evidence that the deceased was free from negligence which contributed to the collision which caused his death, and if you find from all the evidence in the case that the plaintiff has not so proven both of said facts, then you should find the defendant not guilty."

That this instruction stated the law correctly can not be questioned. We do not find that the principle of law sought to be presented to the jury by this instruction is fully covered by any other instruction, and appellant therefore had a right to have it go to the jury. For the errors in regard to the instructions above noted, the judgment must be reversed and the cause remanded.